### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MARVIN LANGLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-2832-K |
| | § | |
| METROPOLITAN LIFE INSURANCE | § | |
| COMPANY and SOUTHWEST | § | |
| AIRLINES COMPANY, | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant Metropolitan Life Insurance Company's ("MetLife") Renewed Motion for Judgment on the Administrative Record Pursuant to Federal Rule of Civil Procedure 52 (the "Motion") (Doc. No. 32), Plaintiff Marvin Langley's Brief in Support of His Response to Defendant MetLife's Motion (the "Response") (Doc. No. 36), and Defendant's Reply to Plaintiff's Response to the Motion (the "Reply") (Doc. No. 38). The Court has carefully considered the Motion, the Response, the Reply, the applicable law, and the administrative record, including relevant portions of the supporting appendices. After conducting a *de novo* review of the administrative record, the Court finds that Plaintiff fails to satisfy his burden of establishing his entitlement to benefits under the Southwest Airlines Company Welfare Benefit Plan (the "Plan"). Accordingly, the Court **GRANTS** the Motion.

## I.   Factual Background

Plaintiff Marvin Langley previously worked for Southwest Airlines Company ("Southwest"). *See* Doc. No. 36 at 4, ¶2 (all citations to CM/ECF assigned page number unless otherwise noted). On November 19, 2023, Plaintiff was inspecting "wing to body panels" that were removed from an aircraft in Southwest's fleet. *Id.* "When the panels are removed by mechanics, they put them on storage racks on the hangar floor. Then the inspectors [such as Plaintiff] are given task cards to inspect these removed panels for faults and discrepancies and document any damage." *Id.* The panels each weigh over 50 pounds. *Id.* at 5, ¶3.

Plaintiff alleges that he sustained injuries to his left eye when he "manually lift[ed] heavy body panels for inspection." *Id.* Plaintiff alleges that after he lifted a panel, he lost vision in his left eye. *Id.* He alleges that Southwest "failed to provide [him] with special lifting devices to lift these panels, despite numerous warnings regarding the risk of injury[.]" *Id.* at 4, ¶2. On November 27, 2023, Plaintiff saw Dr. Sierra Suarez, his optometrist, who then referred him to Dr. Musa R. Abdelaziz, his retinal specialist. *See id.* at 5, ¶4. Dr. Abdelaziz diagnosed Plaintiff with a Central Retinal Vein Occlusion ("CRVO") with macular edema in his left eye, as well as "retinal hemorrhaging," secondary to CRVO, also in his left eye. Doc. No. 32 at 4, 7, 13.

Thereafter, Plaintiff filed a claim for accidental dismemberment benefits under the Plan. *Id.* at 7. Upon receiving notice of the claim, MetLife requested that Plaintiff and his treating physician fill out statement of claim forms for MetLife's review. *Id.*

Both Plaintiff and Dr. Abdelaziz filled out the forms, which Plaintiff faxed to MetLife on January 9, 2024. *Id.*; *see also* Doc. No. 33-1 at 43–66 (statement of claim forms completed by Plaintiff and Dr. Abdelaziz). On January 23, 2024, MetLife denied Plaintiff's claim. Doc. No. 32 at 8; *see also* Doc. No. 33-1 at 90–91 (denial letter). Plaintiff subsequently filed an appeal of MetLife's decision, which was unsuccessful. *See* Doc. No. 32 at 9 ("[w]ith no evidence that Plaintiff's loss of sight was solely and directly due to an accident, MetLife upheld the denial of Plaintiff's claim"); Doc. No. 33-1 at 116–17 (appeal determination letter).

Plaintiff then filed suit against MetLife and Southwest in Texas state court, alleging wrongful denial of benefits under the Plan, which is governed by the Employee Retirement Income Security Act ("ERISA"), unfair or deceptive settlement practices, and negligence. *See* Doc. No. 1-2 (Plaintiff's original state court petition). Defendants MetLife and Southwest removed this case to federal court on the basis of federal question jurisdiction under 28 U.S.C. § 1331. Doc. No. 1 at 2 (notice of removal). Plaintiff later filed his Second Amended Complaint (Doc. No. 30), which is the live pleading, asserting claims for wrongful denial of benefits against MetLife and negligence against Southwest. *See* Doc. No. 30.

MetLife then filed the present Motion, to which Plaintiff filed his Response and MetLife its Reply. Therefore, the Motion is now ripe for determination. Only Plaintiff's claim against MetLife for wrongful denial of benefits is at issue in the present Motion.

## II.    Legal Standards

Before reviewing MetLife's denial of benefits, the Court must first resolve two matters. First, it must address Plaintiff's argument that a motion for judgment on the administrative record under Federal Rule of Civil Procedure 52 is not a permitted procedural mechanism, but rather MetLife's Motion should be treated as a motion for summary judgment. *See* Doc. No. 36 at 6–8, ¶¶9–16. Second, the Court must address the proper standard for reviewing a denial of benefits under an ERISA-governed plan.

### A.    Federal Rule of Civil Procedure 52

Plaintiff argues that "[a] motion for judgment on the administrative record is 'a motion that does not appear to be authorized in the Federal Rules of Civil Procedure.'" *Id.* at 6, ¶9 (quoting *Hall v. Mut. of Omaha Ins. Co.*, Civ. Action No. 4:16-CV-160-DMB-JMV, 2018 WL 1440075, at *2 (N.D. Miss. Mar. 22, 2018)) (internal quotations omitted). In lieu of providing explanation, Plaintiff abruptly attempts to convert MetLife's Motion into one for summary judgment. *See* Doc. No. 36 at 6–9, ¶¶9–21. On that argument, Plaintiff concludes that he "has satisfied his burden to show that a genuine dispute of material fact exists" as to his entitlement to dismemberment benefits. *Id.* at 9, ¶18.

Plaintiff's argument is incorrect. Contrary to Plaintiff's contentions, multiple courts have used Rule 52, which governs findings of fact and conclusions of law, to analyze claims for wrongful denial of benefits under ERISA. *See Bellace v. Hartford Life & Accident Ins. Co.*, Civ. Action No. 3:24-CV-00136-K, 2025 WL 2345157, at *2 (N.D.

4

Tex. Aug. 13, 2025) (Kinkeade, J.) (analyzing denial of benefits under Rule 52); *Leontieva v. Metro. Life Ins. Co.*, Civ. Action No. 4:22-CV-02822, 2024 WL 5185695, at \*2 (S.D. Tex. Mar. 29, 2024) (quoting *Hodge v. Guardian Life Ins. Co. of Am.*, Civ. Action No. 4:20-CV-2088, 2021 WL 5142793, at \*1 (S.D. Tex. Sept. 10, 2021)) ("[i]n deciding similar ERISA benefit disputes, this Court has determined that the 'appropriate way to resolve [the] dispute is by making findings of fact and conclusions of law consistent with Rule 52'"); *Wicks v. Metro. Life Ins. Co.*, No. 23-11247, 2024 WL 4212891, at \*4 (5th Cir. Sept. 17, 2024) (noting that the district court conducted *de novo* review under Rule 52). Accordingly, the Court finds that Rule 52 is a proper procedural mechanism here and will analyze the present Motion under Rule 52.

### B.    Standard of Review

MetLife argues that the Court must apply a *de novo* standard in reviewing MetLife's denial of benefits. *See* Doc. No. 32 at 10. Plaintiff does not challenge MetLife's contention or provide any additional insight as to the proper standard of review. Because there is no disagreement between the parties as to application of the *de novo* standard (a more favorable standard for Plaintiff), the Court will review MetLife's denial of benefits *de novo*. *See Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989) (default standard of review in benefits denial case is *de novo*); *see also Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246 (5th Cir. 2018) (*de novo* standard applies to denial of benefits based on legal interpretation of benefits plan or factual determination).

5

Under the *de novo* standard of review, the Court must "independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing" his entitlement to benefits. *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1030 (E.D. Tex. 2019) (Mazzant, J.) (internal quotations omitted). MetLife's denial of benefits "is not afforded deference or a presumption of correctness." *Wicks v. Metro. Life Ins. Co.*, Civ. Action No. 4:21-CV-1275-O, 2023 WL 5216493, at *6 (N.D. Tex. Aug. 14, 2023) (O'Connor, J.) (internal quotations omitted). Here, Plaintiff holds the burden of proof to show, by a *preponderance of the evidence*, his entitlement to benefits under the Plan. *See Bellace*, 2025 WL 2345157, at *3; *Leontieva*, 2024 WL 5185695, at *2 (emphasis added). Importantly, the Court's review of MetLife's denial of benefits is *limited to the administrative record*, which "consists of relevant information made available to [MetLife] prior to [Plaintiff's] filing of a lawsuit and in a manner that gives [MetLife] a fair opportunity to consider it." *Leontieva*, 2024 WL 5185695, at *2 (quoting *Est. of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000)) (emphasis added); *see also Ariana M.*, 884 F.3d at 256.

## III.    Analysis

MetLife argues that Plaintiff is not entitled to accidental dismemberment benefits under the Plan. *See* Doc. No. 32 at 5. Specifically, MetLife argues that Plaintiff "cannot point to a single piece of evidence in the [a]dministrative [r]ecord that proves that an accidental injury occurred that was the ***sole and direct cause*** of the loss of sight

in his left eye." *Id.* at 13 (emphasis original). MetLife further argues that the Plan's exclusion of any loss caused by a pre-existing illness or infirmity also bars Plaintiff's entitlement to benefits. *See id.* In all, MetLife asserts that Plaintiff fails to establish his entitlement to benefits by a preponderance of the evidence. *See id.* at 14; *Bellace*, 2025 WL 2345157, at *3 (quoting *Pike*, 368 F. Supp. 3d at 1031) (*de novo* review under preponderance of the evidence standard).

In his Response, Plaintiff provides almost no argument in opposition to MetLife's Motion. *See generally* Doc. No. 36. Rather, Plaintiff spends a substantial amount of time attempting to convert MetLife's Motion, correctly brought under Rule 52, into a motion for summary judgment. *See id.* at 6–9, ¶¶9–21. Plaintiff argues that "[t]here are genuine disputes of material fact or law regarding Plaintiff's loss of vision from unavoidable exposure to lifting heavy wing panels." *Id.* at 8, ¶15.

In its Reply, MetLife asserts that "[n]ot only has Plaintiff not met his preponderance-of-the-evidence burden, but as a matter of law there is no evidence to support his claim." Doc. No. 38 at 6. MetLife also objects to a substantial amount of the Appendix to Plaintiff's Response (the "Response Appendix") (Doc. No. 37) and certain statements in Plaintiff's Response. *See id.* at 2–3.

Having carefully conducted a *de novo* review of the administrative record, the Court finds that Plaintiff fails to satisfy his burden of establishing his entitlement to benefits by a preponderance of the evidence. For the following reasons, the Court **GRANTS** the Motion.

### A.    MetLife's Objections

MetLife objects to most of the Response Appendix submitted by Plaintiff. *See id.* Specifically, MetLife argues that all but one page of the Response Appendix "was not made available to MetLife in making its claim determination and are not a part of the administrative record[.]" *Id.* at 2. MetLife also objects to certain statements contained in Plaintiff's Response, arguing that Plaintiff alleges facts and cites evidence that were not part of the administrative record. *See id.* at 3. Plaintiff provided no response to MetLife's objections.

The Court is unpersuaded by MetLife's objections to the statements contained in Plaintiff's Response and **overrules** said objections. However, the Court *does* find persuasive MetLife's objections to the Response Appendix. For all of the persuasive reasons stated by MetLife in its Reply, the Court **sustains** MetLife's objections to the Response Appendix and **disregards** the objected-to portions of the Response Appendix. However, the Court notes that, even if it had considered the entirety of the Response Appendix, <u>the outcome herein would remain the same</u>.

### B.    *De Novo* Review of the Administrative Record

For an insured to recover accidental dismemberment benefits under the Plan, he must "sustain an accidental injury that is the Direct and Sole Cause of a Covered Loss[.]" Doc. No. 33-1 at 20. Here, Plaintiff asserts a benefits claim based on his loss of vision, which is a "Covered Loss" under the Plan. *See id.* at 13 ("[l]oss of sight means permanent and uncorrectable loss of sight in the eye. Visual acuity must be 20/200 or

worse in the eye or the field of vision must be less than 20 degrees"). Importantly, for the injury to be the "Direct and Sole Cause" of the loss, the loss must occur "within 12 months of the date of the accidental injury and [must be] the direct result of the accidental injury, *independent of other causes*." *Id.* at 20 (emphasis added). MetLife contends that the administrative record provides no evidence that the injury Plaintiff sustained while inspecting the panels was the "Direct and Sole Cause" of his loss of sight. *Id.* at 12–13.

The Court agrees with MetLife and finds that Plaintiff does not satisfy his burden of establishing his entitlement to benefits by a preponderance of the evidence. Plaintiff visited Dr. Abdelaziz on multiple occasions dating back to 2022. *See* Doc. No. 33-1 at 60. Plaintiff had numerous diagnosed issues in both eyes, including "vitreous opacities" in both eyes, CRVO with macular edema and retinal hemorrhaging secondary to CRVO in his left eye (arising during Plaintiff's panel inspection), a "retinal macroaneurysm" in his right eye, "pigmentary degeneration" in both eyes, and nuclear sclerosis. *Id.* at 48, 59. Dr. Abdelaziz also filled out a statement of claim form provided by MetLife. *See id.* at 59–66. In this form, Dr. Abdelaziz was asked if "the injury described [was] solely responsible for the loss," to which he answered "No." *Id.* at 59. Dr. Abdelaziz also answered "No" when asked if any illness caused the loss. *Id.* Further, when asked to provide the date when Plaintiff's vision "was irrevocably reduced to 20/200," Dr. Abdelaziz answered "N/A." *Id.* at 61. Dr. Abdelaziz also filled out certain sections that were inapplicable to Plaintiff, but in those sections Dr. Abdelaziz

9

answered "No" when asked if Plaintiff's loss resulted from an accidental injury. *See id.* at 62, 64. Based on the foregoing, the Court finds no evidence in Dr. Abdelaziz's statement of claim form and medical records that the injury that arose while Plaintiff lifted the panel was the "Direct and Sole Cause" of Plaintiff's loss of sight.

Along with his letter of appeal, Plaintiff provided MetLife with a letter from Dr. Suarez, Plaintiff's optometrist. *See id.* at 114. In this letter, Dr. Suarez stated that Plaintiff had 20/20 vision in 2022, but his left eyesight deteriorated to 20/400 "[d]ue to hemorrhaging, macular edema, and optic nerve swelling[.]" *Id.* She also stated that CRVO is most common in patients with hypertension, but Plaintiff took medicine for hypertension and was "well controlled." *Id.* Importantly, she stated that lifting heavy panels could contribute to CRVO, but she could not "determine what caused the CRVO to occur, or if it still would have happened if [Plaintiff] had a less strenuous job." *Id.* Like Dr. Abdelaziz's statements, Dr. Suarez's letter provides insufficient evidence that Plaintiff's injury was the direct and sole cause of his loss. In fact, Dr. Suarez could not even determine what caused Plaintiff's CRVO. *Id.*

A careful review of the administrative record reveals that Plaintiff had a pre-existing history of eye conditions, he had hypertension (which can contribute to CRVO), and neither Dr. Abdelaziz nor Dr. Suarez made any statements indicating that Plaintiff's injury was the direct and sole cause of his loss. At most, the administrative record merely shows that Plaintiff's CRVO *could* have caused his loss of sight. In a *de novo* review, Plaintiff must establish his entitlement to benefits by a preponderance of

the evidence. *See Bellace*, 2025 WL 2345157, at *3; *Leontieva*, 2024 WL 5185695, at *2. He fails to do so here. Accordingly, the Court finds that Plaintiff does not satisfy his burden to establish his entitlement to benefits under the Plan.

## IV.   Conclusion

Having conducted a *de novo* review of the administrative record, the Court finds that Plaintiff has not satisfied his burden to establish his entitlement to accidental dismemberment benefits under the Plan. Accordingly, the Court **GRANTS** MetLife's Motion and **AFFIRMS** MetLife's denial of benefits. As a result, Plaintiff's claim against MetLife is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Signed March 30th, 2026.

_Ed Kinkeade_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE